Succrs. of Canals Bros. & Co., *S. en C.*, Plaintiff and Appellee, *v.* Heirs of Galo Quiñones López, Defendants and Appellants.

No. 5846. Argued December 1, 1932.—Decided April 18, 1934.

*L. Mercader* for appellants. *López de Tord & Zayas Pizarro* for appellee.

Mr. Justice Aldrey delivered the opinion of the court.

The defendants in this case took this appeal from a decision which adjudged them to pay a certain sum of money to the plaintiff.

The plaintiff is the commercial partnership, Successors of Canals Bros. & Co., *S. en C.*, and the defendants are the widow and sons, all of age, of Galo Quiñones López.

On November 26, 1927, Galo Quiñones López signed two letters, after reading them, and delivered them to an agent of the plaintiff. These letters, which have different dates, were signed on the same day and read as follows:

"Manatí, P. R., November 15, 1927.—Successors of Canal Bros. & Co., Ponce, Puerto Rico.—Dear Sirs: The present writing is for the purpose of confirming what I stated to you orally, that is, that on this date I have opened a commercial establishment for the purchase and sale of dry goods in the town of Manatí, at the head of which I have placed my son-in-law, Manuel Chameli.

"It being my desire to negotiate with you for the purchase of said merchandise for the said establishment, at your usual terms, it is understood that any business done by you with my above-mentioned son-in-law will be done as though it were with me and I will be responsible to you for it at any time.

"Very truly yours,

"Galo Quiñones.

"Manatí, P. R. Nov. 26, 1927.—Successors of Canals Bros. & Co., Ponce, P. R.—Dear Sirs: In accordance with our verbal agreement I am responsible for the payment of $1,013.45, which sum will be remitted to you in installments until it is fully paid.

"Yours truly,

"Galo Quiñones."

Some days before those letters were signed, the salesman had a conversation in Manatí with Galo Quiñones as a result of which the plaintiff drew up the said letters and gave them to its salesman in order that he might obtain the signature, which he did. The $1,013.45 for which Quiñones made himself responsible in one of the letters was the exact amount

for which Manuel Chameli remained indebted to the plaintiff when he had a store of his own. As a consequence of those letters a store was opened in Manatí in the name of Galo Quiñones, who paid the taxes on it, and the Ponce partnership opened a current account for Galo Quiñones. The latter died on February 20, 1929, and Chameli continued making purchases from the paintiff up to the sum of $785.70 which he paid in installments totalling $890, which left a credit of $104.30. It does not appear whether or not the Ponce partnership had notice of the death of Quiñones. The Ponce firm only claims from the heirs of Galo Quiñones the sum of $2,722.45, which includes the balance due on the merchandise bought by Quiñones up to the time of his death, the sum of $1,013.45 above mentioned, and the interest at 1% per month. From the $2,722.45 the lower court deducted the interest charged and the credit of $104.30 remaining from the $890 paid by Chameli for the purchases made after the death of Quiñones, and ordered the defendants to pay the sum of $2,380.85, with costs but without including attorney's fees.

The first error assigned in support of this appeal is that the lower court erred in finding that Galo Quiñones wrote and sent the letters of November 15 and 26, 1927.

It is true that he did not draft these letters but there is very abundant evidence, even of his own relatives, that he read and signed them, delivering them afterward to the salesman of the plaintiff, for which reason the error alleged is not tenable.

The second assignment is based on the proposition that the letter of November 26, 1927, should not have been admitted in evidence to prove a new cause of action which was not alleged in the complaint, and which the defendants were not prepared to meet.

That letter is the one in which Galo Quiñones made himself responsible for the payment of $1,013.45 and, although it is not mentioned in the complaint, it does not adduce a new cause of action because the account for $2,722.45 with

interest rendered by the plaintiff included the said sum of $1,013.45 which Galo Quiñones undertook to pay. That item and those representing the sale of provisions constituted a single obligation of Galo Quiñones, since he bound himself to pay both. Moreover, if that letter constituted a new cause of action, the defendants could have requested a continuance of the trial for the purpose of presenting any additional defense but they failed to do so.

The third assignment is that the trial court erred in holding that Galo Quiñones was the sole owner of the store managed by Chameli.

The letter of Galo Quiñones to the plaintiff saying that he had opened a commercial establishment at the head of which he had placed his son-in-law Manuel Chameli, that he wished to open negotiations for the purpose of buying merchandise, and that he would be responsible, leaves no doubt in its clear words that the said establishment was his. Moreover, he paid the tax levied on that store and the evidence does not show the contrary. Chameli himself has not only failed to deny this fact but has stated it to be so. Moreover, no evidence to the contrary has been presented by the defendants, since the statements of the widow and of one of the children to the effect that they did not know that Galo Quiñones had such a store are not sufficient to destroy the clear words of the document signed by Galo Quiñones. The plaintiff could have relied on the contents of said letter and also dealt directly with Chameli as the representative of Quiñones, inasmuch as in the said letter it is stated that any business done with his son-in-law would be the same as though it were done with him, since he made himself responsible for it. In view of this, the fact that some drafts for payment on account were drawn by Chameli does not prove that the store did not belong to Quiñones.

The fourth assignment is that Manuel Chameli was not shown to be an attorney in fact of Galo Quiñones.

In support of this assignment it is said that Chameli was not the attorney in fact of Quiñones because the store belonged to the former although it was in the name of the latter, and that the cause of action should be against Chameli for the merchandise bought by him, and not against the defendant heirs. There is no evidence in the record to support those conclusions of the defendants. On the contrary, the letter of November 26, 1927, is proof of the fact that he authorized his son-in-law to take goods for said store for the account of Quiñones. This power constitutes a special agency even though these words are not used in the letter. As a result, Galo Quiñones was, and his heirs are, responsible for the merchandise taken by Chameli for the store. Whether or not he was authorized by the heirs to continue the business of the father is not important, because there is no claim against the defendants on account of such purchases, nor are they ordered to pay for them, since they were paid. Therefore, the lower court did not err in holding that Chameli was an attorney in fact of Quiñones in the business of the store.

The fifth assignment sets forth that the lower court erred—

"In not holding that the conduct of Quiñones López, in signing the letters of November 15 and 26, 1927, was equivalent at most to a limited guaranty in favor of the plaintiff partnership; that the same was null and void as to the community between him and his wife, Carolina Howe; and that, even if it had been valid, it had been fully discharged."

The appellants begin the argument under this assignment by saying that the details and circumstances of this case convincingly show that if Galo Quiñones signed the letters mentioned, he did so with the *bona fide* intention of opening a credit for and of guaranteeing his son-in-law Chameli in his dealings with the plaintiff. It is not impossible that such may have been the case, but if that was the purpose of Quiñones, the letters that he signed do not show it, since it does not appear from them that he was constituting himself into a surety for Chameli, but that anything that Chameli might

buy from the plaintiff for the store would be as though Quiñones had bought it and he would be responsible for it. In other words, that the purchases made by Chameli would be purchases made by Quiñones and he would be responsible for their payment. The letters do not contain a guaranty but a power, for the consequences of which Quiñones makes himself expressly responsible. The statement of any witness to the effect that Quiñones guaranteed Chameli cannot destroy what appears to the contrary in the documents signed by Quiñones.

It being established that this case does not involve a guaranty but the debt of a person incurred by his attorney in fact, expressly empowered to do so, it is idle to decide whether or not Quiñones could furnish such guaranty without the express consent of his wife, and whether the same was fulfilled. It is sufficient to say that section 1328 of the Civil Code only requires the express consent of the wife in order that the husband may give, sell, or bind for a consideration the real estate of the conjugal partnership. *American Colonial Bank* v. *Registrar,* 28 P.R.R. 14.

The sixth assignment is that the court erred in admitting copies of documents to prove the personality of the plaintiff.

In order to prove the partnership agreement and the amendments to the same, the plaintiff presented a document executed by a notary attesting that he had been shown several public deeds which he transcribed in the document. It also presented a certificate issued by the Registrar of Property of Ponce, based on the Mercantile Registry of said city, in which the partnership agreement and amendments thereto appeared recorded.

As to this assignment, the appellants confine themselves to saying that a notary has authority to certify only as to the documents in his custody; a question which it is not necessary to decide in this case because it has been proven

that the deed of partnership of the plaintiff, and that of its amendments, are recorded in the Mercantile Registry.

They also say that the letter of November 15, 1927, is addressed to Successors of Canals Bros. & Co., and that the plaintiff is Successors of Canals Bros. & Co., *S. en C.* This objection is without merit because, aside from the fact that it was proved at the trial that there exists only one partnership Successors of Canals Bros. & Co., *S. en C.,* in Ponce, the defendants cannot deny the capacity of the plaintiff to sue, as it was from the plaintiff that their father bought merchandise and to it that payments on account thereof were made. *Houston Packing Co.* v. *Pagán López & Co.,* 20 P.R.R. 233; *Meunier Freres* v. *Amill,* 25 P.R.R. 738.

In another assignment of error, the seventh, it is urged that the current account presented by the plaintiff to establish the debt for which payment is claimed from the appellants should not have been admitted in evidence. That account not only appears on the books of the firm which were in accordance with the law and introduced in evidence, but was established by the testimony of José B. Alvarez and his employee Fernández and also by Chameli, to whom Quiñones entrusted the management of the store and who acted as his attorney in fact with respect to the same. It was accepted by Chameli as correct, for which reason it was admissible. The only item rejected by the court was the interest charged, since it found that there was no agreement to pay interest.

In the eighth assignment it is said that it was error to conclude that the letter of November 26, 1927, authorized the plaintiff to include in the current account the amount guaranteed.

In the letter already cited, Galo Quiñones stated to the Ponce firm that he undertook to pay to it the sum of $1,013.45. This constituted the recognition of an obligation on his part in favor of the plaintiff firm and, therefore, this indebtedness acknowledged by him could be included in the current account

as a debt of Quiñones. Its terms do not show it to be a guaranty.

The appellants also complain of the fact that the court only applied to the account $104.30, paid by Chameli to the plaintiff after the death of Quiñones, instead of the $890 that he paid.

As the power which Galo Quiñones conferred upon Chameli terminated upon the death of the former, and without there being any showing that the heirs of Quiñones authorized the plaintiff to continue the business, and as Chameli actually continued to buy merchandise from the plaintiff, the payments totalling $890 that he made must have been on account of the goods thus bought, for which reason the court did not commit the error assigned.

Nor was there any grave or manifest error on the part of the lower court in weighing the evidence, which is the last ground of appeal urged. It is predicated principally on the proposition that the store belonged to Manuel Chameli and not to Galo Quiñones. We have already said on this point that the finding of the lower court was correct and in accordance with the evidence.

The judgment appealed from must be affirmed.